PRYOR CASHMAN LLP
Richard Levy, Jr.
Conrad K. Chiu
Lisa M. Buckley
7 Times Square
New York, NY 10036-6569
Tel.:    (212) 421-4100
Fax:    (212) 326-0806

*Attorneys for Megan E. Noh,*
*Chapter 11 Trustee of P8H, Inc.,*
*d/b/a Paddle 8, Plaintiff*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re:

P8H, INC., d/b/a PADDLE 8,

                                        Debtor.

-------------------------------------------------------x

MEGAN E. NOH, in her capacity as the Chapter 11 Trustee of P8H, INC., d/b/a PADDLE 8,

                                        Plaintiff,

                        - against –

JOHN TEXTOR, also known as JOHN C. TEXTOR, an individual, FUBOTV, INC. (formerly known as FACEBANK GROUP, INC.), a Florida corporation, DIGITAL COMMERCE STRATEGY AG (formerly known as FACEBANK AG), a Swiss joint stock company, FBNK FINANCE S.À.R.L., a Luxembourg limited liability company, and STOCKACCESS HOLDINGS SAS, a French joint stock company

                                        Defendants.

-------------------------------------------------------x

Chapter 11

Case No. 20-10809 (smb)

Adv. Proc. No. 20-_____ (smb)

# **COMPLAINT**

Megan E. Noh, solely in her capacity as the Chapter 11 Trustee ("Trustee") appointed for the bankruptcy estate of debtor P8H, Inc., d/b/a Paddle 8 (the "Debtor" or "P8H"), and not individually, alleges, on information and belief (except with respect to Paragraphs 1-6 and 13-18, which are alleged on knowledge):

<u>**NATURE OF ADVERSARY PROCEEDING**</u>

1.      In this adversary proceeding, the Trustee, as plaintiff, seeks relief against:

(a)      defendant John Textor (also known as John C. Textor), an individual who is believed to be a resident of Florida and to maintain business offices in Florida and New York("Textor"), determining that, as an insider of the Debtor and an insider of the FaceBank Defendants (defined below), Textor is liable to the Debtor's estate for damages caused by his breaches of fiduciary duties of care and loyalty owed to the Debtor and its creditors and stakeholders, and for other misconduct including, among other things, negligence and gross negligence, mismanagement of the Debtor and waste of its assets;

(b)      defendant fuboTV Inc., a publicly-traded Florida corporation formerly known as FaceBank Group., Inc., and known previous to that as Pulse Evolution Group, Inc. ("FaceBank"), and FaceBank's former subsidiaries or affiliates defendant FBNK Finance S.à.r.l., a Luxembourg limited liability company ("FBNK"), defendant Digital Commerce Strategy AG, a Swiss joint stock company formerly known as FaceBank AG ("FBAG"), and defendant Stockaccess Holdings SAS, a French joint stock company ("SAH", and collectively with FaceBank, FBNK and FBAG, the "FaceBank Defendants")), determining that the FaceBank Defendants, jointly and severally, are liable to the Debtor's estate for damages caused by aiding and abetting Textor in breaching the duties owed to the Debtor and its creditors, wasting corporate assets of the Debtor, and acting negligently and/or grossly negligently in the management and operation of the Debtor; and

2

(c)       all of the Defendants declaring that any alleged or actual claim of any or all of them against the Debtor for payment of any debts or obligations should be equitably subordinated to the claims of all other creditors of the Debtor and/or recharacterized as equity interests.

## JURISDICTION AND VENUE

2.       This Court has jurisdiction over this proceeding in accordance with 28 U.S.C. §§ 157 and 1334(b).  Venue is properly laid in this district pursuant to 28 U.S.C. § 1409(a).

3.       This proceeding is a core proceeding that may be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).

4.       Pursuant to Rule 7008 of the Bankruptcy Rules, the Trustee consents to entry of final orders and judgments by the Bankruptcy Court in this adversary proceeding.

## PARTIES

5.       The Trustee, as plaintiff, is the duly appointed and qualified Chapter 11 trustee for the Debtor and its Chapter 11 estate.

6.       The Debtor is a Delaware corporation that maintained its principal office at all relevant times prior to March 16, 2020, in New York, New York.

7.       Defendant Textor is an individual who is a resident of the State of Florida, and/or maintains places of business in the States of Florida and New York.  Textor is a co-founder, and is the current Head of Studio, of FaceBank, whose principal office is maintained in New York.

8.       Textor was a senior executive officer and director of FaceBank at all relevant times from mid-2018 until mid-2020, and was elected to the board of directors of the Debtor on or about November 29, 2019.  Textor remained a director of the Debtor until in or about March 2020.

9.       Textor regularly engages, and is currently engaged, in business in the State of New York.  At all times relevant to the claims alleged below, Textor in business in the State of New

York, and/or transacted business in the State of New York related to the subject matter of this complaint and the claims asserted by the Trustee.

10.     Defendant FaceBank is a publicly-listed Florida company with its principal place of business in the State of New York.  Prior to August 2019, FaceBank was known as Pulse Evolution Group, Inc.  From August 2019 until August 10, 2020, FaceBank was known as "FaceBank Group Inc. until on or about on or about August 10, 2020, when FaceBank changed its name to "fuboTV Inc.".  At all times relevant to the claims alleged below, FaceBank engaged in business in the State of New York, and/or transacted business in the State of New York related to the subject matter of this complaint and the claims asserted by the Trustee.

11.     Defendant FBNK is a Luxembourg joint stock company that was,  until on or about July 19, 2020, directly or indirectly a wholly-owned affiliate of FaceBank.  FBNK appeared and participated in this bankruptcy case through its counsel of record.  At all times relevant to the claims alleged below, FNBK transacted business in the State of New York related to the subject matter of this complaint and the claims asserted by the Trustee.

12.     Defendant FBAG is a Swiss joint stock company that was, until on or about July 19, 2020, directly or indirectly a wholly-owned affiliate of FaceBank.  On or about August 14, 2020, FBAG changed its name to Digital Commerce Strategy AG.  Prior to September 2019, FBAG was known as Oakley Capital International AG ("Oakley").  At all times relevant to the claims alleged below, FBAG transacted business in the State of New York related to the subject matter of this complaint and the claims asserted by the Trustee.  At all times relevant to the claims alleged below, FBAG owned 100% of the equity interests in SAH.

13.     References in this complaint to "FBAG" refer to defendant Digital Commerce Strategy AG for the period of time before FBAG changed its name to Digital Commerce Strategy

AG.  References in this complaint to "Oakley" refer to FBAG for the period of time before Oakley

changed its name to FBAG.

14.    Defendant SAH is a French joint stock company that was, until on or about July 19,

2020, directly or indirectly a wholly-owned affiliate of FaceBank. At all times relevant to the

claims alleged below, SAH transacted business in the State of New York related to the subject

matter of this complaint and the claims asserted by the Trustee.

## PROCEDURAL BACKGROUND

15.    On March 16, 2020 (the "Petition Date"), the Debtor filed a voluntary petition (the

"Petition") (ECF No. 1) for relief under chapter 11 of title 11, United States Code ("Bankruptcy

Code") in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy

Court").   From that date until the appointment of the Trustee, the Debtor held its assets and

managed its business and affairs as a debtor in possession under Section 1107 of the Bankruptcy

Code.

16.    On April 15, 2020, the Office of the United States Trustee for this District (the

"U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") (ECF

No. 23).

17.    Following the resignation of the last member of the Debtor's board of directors in or

about late February or early March, 2020, the Bankruptcy Court on April 30, 2020, directed the

appointment of a Chapter 11 trustee in the above-referenced bankruptcy case (ECF No. 36).

18.    On May 8, 2020, the U.S. Trustee filed an application for an order approving the

appointment of the Trustee (ECF No. 42).  On the same day, this Court entered an order approving

the appointment of the Trustee (ECF No. 43).  The Trustee thereafter qualified as Trustee and filed

her bond in the Bankruptcy Court.

## BACKGROUND FACTS

19.    From and after its formation in or about 2017, the Debtor operated a business that was engaged in facilitating the sales of art works, collectibles and experiences (such as exclusive access to sports and/or entertainment events) through an online platform that hosted sales in both auction (*i.e.,* competitive bidding) and "storefront" (*i.e.*, fixed price per unit of merchandise) formats.

20.    On or about March 8, 2019, the Debtor and FBAG (then known as Oakley) entered into, inter alia, a Secured Loan Agreement (as at any time amended, the "Loan Agreement"), under which Oakley agreed to lend to the Debtor the principal sum of $10,000,000.00 (the "Term Loan").[1]  A true copy of the Loan Agreement is attached as **Exhibit "1"** and is incorporated by reference.

21.    On or about February 12, 2019, for the purpose of evidencing the indebtedness due to Oakley in connection with the Term Loan, the Debtor made, executed, acknowledged, and delivered to Oakley a promissory note in the original principal amount of $10,000,000.00 (the "Note"), under which the Debtor was bound and promised to pay to Oakley said sum, with interest thereon, all in accordance with the terms of the Note.  A true copy of the Note is annexed as Exhibit A to the Loan Agreement attached as Exhibit "1".

22.    To secure the obligations of the Debtor to Oakley under the Loan Agreement and the Note, the Loan Agreement provided that the Debtor pledged "[a]ll assets of Borrower including, without limitation, Paddle8 brand, URL address and social networks presence, as well

---

[1]    The actual amount of new financing made available to the Debtor under the Loan Agreement was $4,200,000 after deducting amounts owed by the Debtor to Oakley under a previous Convertible Loan Subscription Agreement dated December 12, 2017, accrued interest, and various fees related to the Term Loan.

as Paddle8 digital products and their underlying source code, servers as well as all of the Paddle8 fixed assets and customer databases (collectively the 'Collateral') of Borrower.… (Ex. 1 at § 1.4).

23.     On or about March 15, 2019, FBAG (then known as Oakley) and SAH entered into an Assignment and Assumption Agreement (the "SAH Assignment Agreement"), under which Oakley transferred, conveyed, assigned, and delivered to SAH, and SAH acquired, all of Oakley's right, title, and interest in and to the Loan Agreement, the Term Loan and the Note.  A true copy of the SAH Assignment Agreement is attached as **Exhibit "2"** and is incorporated by reference. Pursuant to the SAH Assignment Agreement, SAH accepted assignment of the Loan Agreement, the Term Loan and the Note from Oakley and assumed any and all right, title, and interest transferred, conveyed, assigned, and delivered by Oakley, and became the lender of record to P8H under those loan documents.

24.     Prior to August 15, 2019, in addition to its status as lender of record to P8H, SAH held 2,285,067 Class C shares of stock of P8H, and 678,807 shares of stock of The Native SA, a Swiss company ("The Native").  The shares of The Native held by SAH constituted the controlling stock interest in The Native.  The Native SA, in turn, held approximately 15% of the common stock of P8H.

25.     On August 15, 2019, FaceBank (known at that time as "Pulse Evolution Group, Inc.") acquired 100% of the issued and outstanding capital stock of FBAG .

26.     As of August 15, 2019, at the time it was acquired by FaceBank, FBAG was the sole owner of SAH which, in turn, was the sole owner of 8+ Holdings, a New York limited liability company ("8+ Holdings").  8+ Holdings, in turn, held 51% of the stock ownership interest in P8H, among other investments.

27.     As part of its acquisition of FBAG, and as reported to the United States Securities and Exchange Commission ("SEC"), FaceBank acquired investments in P8H consisting of the

common shares and the Term Loan that FBAG had acquired from P8H's prior lender and equity holder, SAH. As further reported by FaceBank to the SEC, as of September 30, 2019, its long-term investments included an equity investment in the shares of, and a term loan to, P8H.

28.     On November 29, 2019, Textor became a member of the board of directors of P8H.

29.     During the period of Textor's membership on the P8H board of directors, Textor was also a senior executive, director and shareholder of FaceBank, and the individual having primary responsibility for FaceBank's direct and indirect investment in P8H, and the FaceBank Defendants' investments in, loan to and dealings with P8H..

30.     On or about March 31, 2020, SAH and FBNK entered into an Assignment and Assumption Agreement (the "FBNK Assignment Agreement"), under which SAH assigned, inter alia, all of its rights, title, and interest in the Loan Agreement and Note to FBNK, in full satisfaction of a certain loan that had previously been made by FBNK to SAH. A true and correct copy of the FBNK Assignment Agreement is attached hereto as **Exhibit "3"** and is incorporated herein by reference.

31.     Pursuant to the FBNK Assignment Agreement, SAH also irrevocably transferred, conveyed, assigned, and delivered to FBNK all of SAH's rights, title, and interest in his holdings of Class C shares of stock of P8H along with SAH's holding of the controlling stock interest The Native.

32.     By reason of the FBNK Assignment Agreement, FBNK became, and FaceBank remained, respectively, the direct majority holder and the indirect majority holder of the issued and outstanding shares of stock of the Debtor. Moreover, FBNK became the lender of record to P8H under the Loan Agreement, the Term Loan and the Note, purporting to hold a senior secured claim and a lien in substantially all of the Debtor's assets.

33.    In 2019, the Debtor increasingly focused its business activities on providing a vehicle for charitable organizations to generate funds by conducting online auctions and storefront sales of art works and other tangible items that had been donated to such charities.

34.    Prior to November 2019, while experiencing substantial and repeated operating losses, the Debtor sustained itself only through capital infusions and loans.

35.    In and after November 2019, the Debtor was only able to sustain its operations by dipping into the proceeds of items sold on the Debtor's online auction and storefront sale platform.

36.    In late 2019, the Debtor's business significantly contracted as a result of the company's financial distress.  By the first quarter of 2020, the Debtor had virtually ceased conducting any new auctions or online storefront sales.

37.    The Debtor's dire situation was further compounded by business and social shut-down orders issued by governmental agencies in or about early March 2020 in response to the spread of the COVID-19 virus.

38.    Textor remained a member of the board of directors of P8H until shortly before the Petition Date.

39.    On or about July 19, 2020, FaceBank reported that it had sold all of its common stock of FBAG (constituting all of the issued and outstanding shares of FBAG) to C2A2 Corp. AG Ltd., a Swiss company ("C2A2").  At that time, FaceBank ceased to be an affiliate of FBAG, FBNK and SAH.

40.    At all times from August 15, 2019 until July 19, 2020, FaceBank directly or indirectly held the controlling stock interests in each and all of FBNK, Oakley, SAH, and 8+ Holdings.

41.    At all relevant times until July 19, 2020, each of FaceBank, FBNK, FBAG and SAH was an insider of P8H (as "insider" is defined in the Bankruptcy Code)

42.    At all times from August 15, 2019 until July 19, 2020, Textor was an insider of P8H, FaceBank, FBAG, FBNK and SAH (as "insider" is defined in the Bankruptcy Code).

43.    Prior to August 15, 2019, Textor was an insider of FaceBank.  Textor is an insider of C2A2 (as "insider" is defined in the Bankruptcy Code).

## THE DEBTOR'S DETERIORATING FINANCIAL CONDITION AND INSOLVENCY

44.    At all relevant times, the Debtor was insolvent and therefore, its board of directors and controlling shareholders owed fiduciary duties to maximize the value of the company for the benefit of its creditors as residual stakeholders.

45.    For the year ending December 31, 2018, the Debtor had: (i) net cash in the amount of $752,613.14; (ii) net liabilities and equity in the amount of $2,412,405.03; and (iii) P/L net expenses in the amount of $4,840,844.36 and P/L net income of $4,657,672.18.

46.    For the year ending December 31, 2019, the Debtor had: (i) net cash in the amount of $510,271.25; (ii) net liabilities and equity in the amount of $1,286,452.78; and (iii) P/L total expenses in the amount of $5,026,831.03 and P/L net income of $4,496,725.04.

47.    As a result of the deteriorating financial results, the Debtor's board of directors refused to approve a budget for the company for the year 2020.  Although updated budgets were submitted to the board of directors, no budget was ever approved by the directors.

48.    Moreover, in e-mail correspondence on December 20, 2019 between Valentine Uhovski ("Uhovski"), chief executive officer of the Debtor, and Textor, in which Uhovski sought $600,000.00 in order to meet the Debtor's payroll and payables for auctions conducted in November and December 2019, Textor advised Uhovski that there needed to be an approved budget by the Debtor's board and not just a request from the "company" and "lender" as a result of the "obvious going concern issues of the company" in order to meet operating expenditures.

49.    Uhovski further acknowledged in an email correspondence to Textor on January 3,

2020, that a failure to pay auction payables would damage the reputation of the Debtor and result in an acrimonious business relationship that could injure future business prospects.

50.     Moreover, by early 2020, the Debtor had fallen behind in making payments to persons or entities who offered items for sale through the Debtor's online auction and storefront sale platforms.  Some claimants eventually showed up at the Debtor's headquarters demanding payment while other high profile claimants grew impatient.

51.     By the end of January 2020, it became clear that the Debtor would be in no position to make payments to persons or entities who offered items for sale through the Debtor's online platforms in the foreseeable future as the Debtor would not be able to "break even" until the end of May 2020, according to a February 4, 2020 email sent by Textor to Peter Rich, another member of P8H's board of directors.  As a result, the aging of amounts due to the auction and storefront sellers would continue to increase from 1-30 days and 31-60 days, respectively, to a virtually unpayable status.

52.     Pursuant to the Debtor's business model, each individual and not-for-profit organization desiring to sell artwork or other items on the Debtor's platform (each a "Seller," and collectively, "Sellers") would enter into an agreement for the Debtor to conduct an online auction or a storefront sale of the Seller's property using the Debtor's own online platform.  Pursuant to the contracts entered into between the Debtor, on the one hand, and the Sellers, on the other, the Debtor agreed to pay each Seller the proceeds derived from the online sale following receipt of such proceeds from the purchasers of such property.

53.     During his tenure as a director of the Debtor, Textor engaged in acts of gross mismanagement and disloyalty.  Even as the Debtor faced significant financial difficulty, Textor caused and directed the company not to pay liabilities, including amounts owed to charities and artists, prevented the Debtor from accessing a line of credit to pay its liabilities, and prevented the

company from selling assets, because such courses of action were adverse to his personal financial interests, and not in the interest of the FaceBank Defendants in the respective capacities as direct or indirect lender to and/or as equity holders in the Debtor.

54.     Textor knowingly caused or permitted the misappropriation of funds generated from the Debtor's online auctions and storefront sales, including charity auctions, to be used to pay the operating expenses of the Debtor instead of paying the Sellers, thereby paying one set of business debts with funds owed to other creditors of the company.  Consequently, the Debtor could not escape from its insolvency and undercapitalization, and could never become profitable following the course of business it pursued after August 2019.

55.     In addition, knowing of the Debtor's financial difficulties, Textor refused to allow Uhovski to seek new capital in order to prevent the dilution of the FaceBank Defendants' ownership interests in P8H.

56.     In January 2020, the Debtor's board of directors, with the insistence of Textor, instructed Uhovski to scale back the company's business operations, cut expenses and conduct reductions in its work force.  The board of directors requested budgets in accordance with these parameters and in connection with a corporate planning meeting to be held in Florida.

57.     As a result of failures to cause proper holding and application of online sale proceeds, the Debtor, with the knowledge and consent of Textor, used the funds to defray operational expenses including salaries, benefits and other obligations, leaving Sellers unpaid for the proceeds of items offered for sale by or on behalf of such persons or entities through the Debtor's online platform.

58.     As a direct result of such misappropriation, one not-for-profit entity that engaged the Debtor to administer an online auction of artwork sued the Debtor and other persons shortly before the commencement of the Debtor's bankruptcy case, alleging that the Debtor and certain officers or directors misappropriated or caused the misappropriation of the proceeds from the auction.  Other

entities have threatened or commenced adversary proceedings or contested matters in the Debtor's Chapter 11 case alleging similar failures by P8H to pay over proceeds generated from online auctions and storefront sales run through the Debtor's online platform.

59.     By reason of the failure to manage the operations and cash management of the Debtor, the Debtor and its creditors suffered damages in the amount believed to be millions of dollars in magnitude.

60.     Upon information and belief, Textor, in his position as a board member and as a person controlling FaceBank's interest in the Debtor, was aware of, caused, and/or knew of and ratified, the misappropriation of auction and storefront sale proceeds, and was aware of the Debtor's insolvency and business distress, yet continued to permit auction and storefront sale proceeds to be diverted to payment of the Debtor's operating expenses, while the company had no viable plan or prospect for survival, and in doing so deliberately favored and placed the interests of the FaceBank Defendants ahead of those of the Debtor and its creditors.

61.     Textor became an executive officer of FaceBank on August 8, 2018, and served as FaceBank's chief executive officer until April 1, 2020.  Textor served as FaceBank's executive chairman from April 1, 2020 to April 29, 2020, and as a director of FaceBank from August 8, 2018 to July 31, 2020.  In those capacities, Textor was directly involved in, and directly or indirectly responsible for, the FaceBank Defendants' investments in and loans to P8H.

62.     Notwithstanding his official roles in FaceBank, as a director of P8H Textor owed the Debtor and its creditors fiduciary duties of due care, loyalty, and candor.

63.     At all times relevant, Textor was required to serve as a director of the Debtor in a fair, just, honest, and equitable manner, to exercise due care and diligence in the administration of the affairs of Debtor and in the oversight and preservation of its property and assets, and to act in furtherance of the best interests of Debtor and its stakeholders, including its creditors, not in

furtherance of his or any other person's or entity's own interests or benefit.

64.     By virtue of his fiduciary duties, Textor was required to, among other things:

(a)     conduct the affairs of the Debtor in an efficient, businesslike manner, so as to make it possible to provide the highest quality performance of its business, to avoid wasting its assets, and to maximize its value;

(b)     ensure that the Debtor was operated in a diligent, honest, and prudent manner;

(c)     refrain from advancing his or FaceBank's own interests at the expense of Debtor and its stakeholders, including its creditors; and

(d)     be candid with the Debtor and its stakeholders, including its creditors, with respect to all matters involving or affecting the company.

65.     The conduct at issue involves a knowing and culpable violation of Textor's obligations as a fiduciary of Debtor and its stakeholders, including its creditors, the absence of good faith and undivided loyalty, and a reckless disregard for his duties.  Textor, by reason of his position, connection with the Debtor, and involvement in its business affairs and management, was aware that his actions and the actions of the board, absences of good faith, and reckless disregard of duties posed a risk of serious harm to Debtor and its stakeholders, including its creditors.

66.     Textor undertook his actions for the benefit of himself and/or FaceBank, FBAG and/or FBNK, to the detriment of the Debtor and its stakeholders, including its creditors, and in so doing breached his fiduciary duties.

67.     Moreover, by reason of his role in and influence over the FaceBank Defendants, those entities aided and abetted his actionable conduct to the detriment of the Debtor and its stakeholders, including its creditors.

## CLAIMS FOR RELIEF

## COUNT 1

### (Textor's Breach of the Fiduciary Duty of Care)

68.     The Trustee repeats and realleges each and every allegation contained above as if restated here.

69.     Textor owed the Debtor and its creditors fiduciary duties, including the duties of loyalty, care, and candor.

70.     Pursuant to the fiduciary duty of care, Textor, at all times during his service as a director of the Debtor and as a person exercising control over the Debtor and its principal lender and equity holder, was required to exercise due care and diligence in the administration of the affairs of the Debtor and in the use and preservation of its property and assets.  Textor, however, caused the Debtor to pursue a course of conduct for his and/or FaceBank's own interests – to protect the value of FaceBank's loan to and investment in the Debtor, regardless of the impact of the conduct on the company or its creditors – which caused significant financial damage to the Debtor, spelled its inevitable demise, and resulted in circumstances under which creditors may never recover the full amount of their losses from the Debtor's bankruptcy estate.

71.     Textor breached his fiduciary duty of care by, *inter alia*, recklessly, negligently, and/or for self-serving reasons, refused to cause or permit the Debtor to pay over to the Sellers of property sold through Debtor's online platform the proceeds from such sales, and instead causing and permitting the diversion of those funds to the payment of the Debtor's operating expenses in order to prop up the value of FaceBank's shares of the Debtor and increase the prospects of possible recovery on its loans and equity investments, thereby resulting in the accrual of substantial claims and obligations of the company to auction and storefront Sellers that could not otherwise be satisfied in the ordinary course of the Debtor's business and affairs.

72.    As a direct result of Textor's breaches of fiduciary duty of care, the Debtor's estate has suffered damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law.

## COUNT 2

### (Textor's Breach of the Fiduciary Duty of Loyalty)

73.    The Trustee repeats and realleges each and every allegation contained above as if restated here.

74.    Pursuant to his fiduciary duty of loyalty, Textor was, at all times relevant, required to act in furtherance of the best interests of Debtor and not in furtherance of his or FaceBank's own interests or benefits.

75.    As a direct result of Textor's breaches of fiduciary duty of loyalty, the Debtor's estate has suffered damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law.

## COUNT 3

### (Textor's Breach of the Fiduciary Duty of Candor)

76.    The Trustee repeats and realleges each and every allegation contained above as if restated here.

77.    Pursuant to his fiduciary duty of candor, Textor was, at all times relevant, required to act in furtherance of the best interests of Debtor and not in furtherance of his or FaceBank's own interests or benefits.

78.    As a direct result of Textor's breaches of fiduciary duty of candor, the Debtor's estate has suffered damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law.

## COUNT 4

### (Textor's Negligence and Gross Negligence)

79.     The Trustee repeats and realleges each and every allegation contained above as if restated here.

80.     Despite duties owed to the Debtor to manage it efficiently, effectively and in the best interests of the company and its stakeholders, Textor breach those duties and acted negligently in mismanaging the Debtor and causing the assets of the Debtor to be dissipated.

81.     Textor knowingly and deliberately placed his and the FaceBank Defendants' interests ahead of those of the Debtor and its stakeholders, including its creditors, notwithstanding, his knowledge of the existence of those duties, and especially in light of the company's serious troubled financial and business condition.

82.     Textor's conduct constituted gross negligence.

83.     As a direct result of Textor's negligence and gross negligence, the Debtor's estate has suffered damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law, plus punitive damages in an amount to be determined at trial.

## COUNT 5

### (Textor's Corporate Waste and Mismanagement)

84.     The Trustee repeats and realleges each and every allegation contained above as if restated here.

85.     Textor mismanaged and wasted, or caused the wasting of, the assets of the Debtor, to the detriment of the company and its stakeholders.

86.     As a direct result of Textor's acts of mismanagement and corporate waste, the Debtor's estate has suffered damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law.

## COUNT 6

### (Textor's Breach of the Duties of Good Faith and Fair Dealing)

87.     The Trustee repeats and realleges each and every allegation contained above as if restated here.

88.     Textor owed the Debtor duties of good faith and fair dealing in performing his duties and responsibilities as a director of the Debtor. Such duties were implied in his agreement to serve, and in his service, as a director of the Debtor.

89.     Textor breached his duties of good faith and fair dealing.

90.     As a direct result of Textor's conduct, the Debtor's estate has suffered damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law.

## COUNT 7

### (FaceBank Defendants' Aiding and Abetting Breaches of Fiduciary Duty, Negligence and Gross Negligence, Corporate Waste and Mismanagement and Breach of Duties of Good Faith and Fair Dealing)

91.     The Trustee repeats and realleges each and every allegation contained above as if restated here.

92.     A fiduciary relationship existed between Textor and P8H.

93.     Textor breached his fiduciary duties to P8H, as alleged above.

94.     The FaceBank Defendants, jointly and severally, under the influence and/or control of Textor, knowingly participated in, and endorsed, ratified and supported, Textor's breach of his

fiduciary duties, negligence and gross negligence, corporate waste and mismanagement, and breach of duties of good faith and fair dealing.

95.     As a direct result of the FaceBank Defendants' conduct, the Debtor's estate has suffered damages in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law.

## COUNT 8

### (Equitable Subordination of Claims of Textor and/or the FaceBank Defendants' to Claims of All General Unsecured Creditors )

96.     The Trustee repeats and realleges each and every allegation contained above as if restated here.

97.     Textor and the FaceBank Defendants engaged in inequitable conduct designed and intended to protect their interest in P8H, to the detriment of other parties holding claims against of P8H including, in particular, general unsecured creditors and sellers of items sold on the Debtor's auction and storefront sale platform.

98.     Such conduct of Textor and the FaceBank Defendants was oppressive to, and inconsistent with, the interests and rights of such claimants.

99.     The conduct of Textor and the FaceBank Defendants injured creditors of P8H.

100.     Each of Textor and the FaceBank Defendants holds, or may hold, a claim against the Debtor's estate, either scheduled by the Debtor or filed against the Debtor's estate.

101.     Equitable subordination of all claims of Textor and/or the FaceBank Defendants against the Debtor to a rank below the claims of general unsecured creditors of the Debtor is consistent with bankruptcy law.

102.     Accordingly, the Trustee is entitled to a judgment equitably subordinating any and all claims of Textor and the FaceBank Defendants below the claims of the general unsecured creditors of P8H, pursuant to Sections 510(c) and 105(a) of the Bankruptcy Code.

## PRAYER FOR RELIEF

WHEREFORE, the Trustee demands judgment against the Defendants:

A.     On Count 1, awarding damages against Textor in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law;

B.     On Count 2, awarding damages against Textor in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law;

C.     On Count 3, awarding damages against Textor in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus punitive damages, plus interest at the highest rate allowable by law;

D.     On Count 4, awarding damages against Textor in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law;

E.     On Count 5, awarding damages against Textor in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law;

F.     On Count 6, awarding damages against Textor in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law;

G.     On Count 7, awarding damages against the FaceBank Defendants, jointly and severally, in an amount to be determined at trial, but believed to be in excess of $1,000,000, plus interest at the highest rate allowable by law;

H.     On Count 8, equitably subordinating any and all claims of Textor and the FaceBank Defendants below the claims of the general unsecured creditors of P8H, pursuant to Sections 510(c) and 105(a) of the Bankruptcy Code; and

I.    Granting such other, further and different relief to the Trustee as the Court deems

just and proper, including the costs of this adversary proceeding.


Dated: New York, New York
       August 28, 2020

                                PRYOR CASHMAN LLP

                                By:  *Richard Levy, Jr.*
                                     Richard Levy, Jr.
                                     Conrad K. Chiu
                                     Lisa M. Buckley
                                7 Times Square
                                New York, New York  10036-6569
                                Tel.:    (212) 421-4100
                                Fax::    (212) 326-0806
                                rlevy@pryorcashman.com
                                cchiu@pryorcashman.com
                                lbuckley@pryorcashman.com

                                *Attorneys for Megan E. Noh, Chapter 11*
                                *Trustee of P8H, Inc. d/b/a Paddle 8, Plaintiff*