**EXHIBIT 1**

This **SECURED LOAN AGREEMENT** is dated as of March 8, 2019 (the "Effective Date"), and agreed to by and between **OAKLEY CAPITAL INTERNATIONAL AG**, a Swiss joint-stock company ("Lender"), and **P8H, Inc**, a corporation incorporated under the laws of the State of Delaware (USA), with its registered office at 107 Norfolk Street, 10002, New York, NY, USA ("Borrower").

## RECITALS

A. Borrower have borrowed the sum of US$ 5,000,000 under the Convertible Loan Subscription Agreement dated December 12, 2017 (the "Outstanding Loans"). The borrowings that comprise the Outstanding Loans and accrued interest represent all the material debt of the Borrower, with the Creditors holding the Outstanding Loans hereinafter referred as the "Creditors".

B. The Native SA, a Swiss listed company with its registered address at 48 Gerbergasse CH-4001, Basel, Switzerland (the "NTIV"), is one of the Creditors and is also a related party to the Borrower.

C. The Borrower has significantly stabilized its business, resolved for both tax liabilities and internal control deficiencies created under prior management and ownership, and is a dynamic, competitive and growing business as of today. The Borrower however remains loss making and is in need of further financing of up to $3.4 million for 2019 (the "New Financing") alone as per the Borrower's 2019 budget unanimously approved by the Borrower's board of directors on January 14, 2019.

D. To obtain the New Financing, and to do so in compliance with the conditions of the Outstanding Loans, Borrower desires to obtain a new secured term loan in the amount of up to US$ 10,000,000 (the "Term Loan") from Lender, and Lender is willing to provide the Term Loan, all in accordance with the terms of this Agreement including conditions precedent, security, covenants and drawdown schedule, all further defined herein.

E. After deducting an amount equal to the Outstanding Loans, accrued interest and the financing, structuring and legal fees from the Term Loan, US$ 4,200,000 (the "Net Term Loan Amount") will be available under the Term Loan for the Borrower to draw-down at its discretion at the Effective Date or at a later date or dates while the Term Loan is in effect.

F. The parties desire that the Borrower effect the pledge on all of the Borrower's assets as further specified herein to guaranty the payment and the performance of the Term Loan and the Obligations under this Agreement, and the Borrower has agreed to do so (the "Security Agreement").

G. Capitalized terms used herein shall have the meanings assigned to them in Schedule A and, for purposes of this Agreement and the other Loan Documents, the rules of construction set forth in Schedule A shall govern. All schedules, attachments, addenda and exhibits hereto, or expressly identified to this Agreement, are incorporated herein by reference, and taken together with this Agreement, constitute but a single agreement.

1

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter contained, the parties hereto agree as follows:

1.  TERM LOAN

1.1  Term Loan.  (a)  Subject to the terms and conditions of this Agreement, on the Effective Date, Lender will provide the Term Loan to Borrower.  The Term Loan shall be evidenced by, and be repayable in accordance with the terms of, the Term Note and this Agreement.  From time to time commencing on the Effective Date, in one or more drawings (each, a "Drawing"), Borrower may draw-down a portion of the outstanding Net Term Loan Amount.  Borrower will provide Lender with ten (10) days' prior written notice of each Drawing (each, a "Draw-Down Notice") specifying the amount of the Drawing (the "Draw-Down Amount").  Lender will wire the Draw-Down Amount to the account that Borrower will designate in its Draw-Down Notice.  The parties agree that an initial Drawing of US$ 6,000,000 is occurring at the Effective Date (that includes refinancing of all the Outstanding Loans as further specified in the clause 1.3 herein).

1.2  Term and Prepayment.  (a)  The Term Loan shall mature December 31, 2022 (the "Maturity Date").  Upon the Maturity Date, Borrower shall pay to Lender in full, in cash: (i) the outstanding Term Loan Balance and any accrued but unpaid interest on the Term Loan Balance, and (ii) any other Obligations due to or incurred by Lender.  The Term Loan Balance shall equal the sum of (i) US$ 5,800,000 (the amount of the Outstanding Loans, accrued interest and financing fees paid via / consolidated into the Term Loan), and (ii) all amounts drawn from the Net Term Loan Amount.  Any prior repayments of the Term Loan will be subtracted from the Term Loan Balance.

(b)  Borrower shall have the right at any time upon five (5) Business Days' prior written notice to Lender to prepay in whole or in part (i) the Term Loan, and (ii) all of the Obligations, all in cash.

1.3  Use of Proceeds; Payment of the Outstanding Loans; Working Capital Use for Remainder.  The parties acknowledge and agree that the proceeds of the Term Loan in the amount of US$5,800,000 will be used to repay and satisfy in full the Outstanding Loans, accrued interest and financing, structuring and legal fees pertinent to this Agreement.  The Net Term Loan Amount, will be available for the Borrower to use for its working capital purposes.

1.4  P8H Assets as Collateral:  All assets of Borrower including, without limitation, Paddle8 brand, URL address and social networks presence, as well as Paddle8 digital products and their underlying source code, servers as well as all of the Paddle8 fixed assets and customer databases (collectively the "Collateral") of Borrower, shall secure the Term Loan and Borrower's obligations under this Agreement.  Borrower shall not otherwise pledge the Collateral and shall maintain the Collateral free of Encumbrances, and will cooperate with the Lender when and if Lender intends to effect the UCC filing on the Collateral.  The Borrower may not transfer ownership of any of the P8H Asset to a third party.

1.5  Interest.  (a)  Borrower shall pay interest to Lender on the outstanding Term Loan Balance at the rate of seven (7) percent per annum (the "Interest Rate").  Interest shall begin accruing on and from the Effective Date.

2

(b) Interest shall be payable semiannually on February 12 and August 12. Any remaining unpaid interest amount will be due and payable (i) at the Maturity Date, (ii) on the Termination Date, and (iii) if any interest accrues or remains payable after the Termination Date, upon demand by Lender.

(c) If any interest or any other payment to Lender under this Agreement becomes due and payable on a day other than a Business Day, such payment date shall be extended to the next succeeding Business Day.

1.6 <u>Receipt of Payments from Borrower</u>. Borrower shall make any payment due under this Agreement to the below account of Lender without set-off, counterclaim or deduction and free and clear of all taxes, not later than 2:00 p.m. (EST time) on the day when due in lawful money of the United States in immediately available funds:

```
Account Name: Oakley Capital International AG
EUR-IBAN: ███████████████████████████
USD-IBAN: ███████████████████████████
Custody Account: ██████████████████
```

```
Bank details:
Bank J, Safra Sarasin Ltd, Elisabethenstrasse 62, 4002 Basel
Bank clearing: 8750 / BIC-Code:SARACHBB
```

2. CONDITIONS PRECEDENT

2.1 <u>Conditions to the Term Loan</u>. Lender shall not be obligated to make the Term Loan or to perform any other action hereunder, until the following conditions have been satisfied in a manner reasonably satisfactory to Lender, or waived in writing by Lender:

(a) The Security Agreement or any other form of the pledge over Collateral had been effected by the Borrower in a form satisfactory to the Lender.

(b) Any representation or warranty by Borrower contained herein or the Loan Documents shall be true or correct in all material respects, as of such date and as of the date of each Drawing, except to the extent that any such representation or warranty is expressly stated to relate to a specific earlier date, in which case, such representation and warranty shall be true and correct as of such earlier date.

(c) The Borrower convened the shareholders meetings to approve this Agreement and all the terms contained herein and received the approval of the Agreement and its terms providing with Lender with the duly executed Borrower's shareholders meeting resolution to that effect.

3

   (d) All of the Creditors agreed to convert or otherwise offset or transfer Outstanding Loans and any accrued interest to be replaced with this Term Loan.  On the Effective Date, Borrower shall have delivered to Lender all documents or instruments necessary to release all Liens on the Collateral, if any, securing its Outstanding Loans or other obligations of Borrower being repaid on the Effective Date.

   (e) The Borrower grants the Lender (or Lender's designated affiliate) the exclusive unrestricted perpetual right to establish and operate the non-profit foundation under the name Paddle8 Foundation (or Paddle8 Stiftung or Fondation de Paddle8 under the Lender's discretion) provided this foundation does not engage in a commercial activity and does not compete with the business of the Borrower.

3. REPRESENTATIONS, WARRANTIES AND ADDITIONAL AFFIRMATIVE COVENANTS

To induce Lender to enter into this Agreement and to make the Term Loan, Borrower represents and warrants to Lender (each of which representation and warranty shall survive the execution and delivery of this Agreement), and promises to and agrees with Lender until the Termination Date as follows:

 3.1 <u>Company Existence; Compliance with Law</u>.  Borrower (a) is, as of the Effective Date, and will continue to be (i) a company, duly organized, validly existing and in good standing under the laws of the State of Delaware, (ii) duly qualified to do business and in good standing in each other jurisdiction where its ownership or lease of property or the conduct of its business requires such qualification, except where the failure to be so qualified could not reasonably be expected to have a Material Adverse Effect, and (iii) in compliance with all Requirements of Law and contractual obligations, except to the extent failure to comply therewith could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect; and (b) has and will continue to have (i) the requisite power and authority and the legal right to execute, deliver and perform its obligations under the Loan Documents, and to own, pledge, mortgage or otherwise encumber and operate its properties, to lease the property it operates under lease, and to conduct its business as now, heretofore or proposed to be conducted, and (ii) all licenses, permits, franchises, rights, powers, consents or approvals from or by all Persons or Governmental Authorities having jurisdiction over Borrower that are necessary or appropriate for the conduct of its business.

 3.2 <u>Organizational Power; Authorization; Enforceable Obligations</u>.  The execution, delivery and performance by Borrower of the Loan Documents to which it is a party:  (a) are and will continue to be within Borrower's power and authority; (b) have been and will continue to be duly authorized by all necessary or proper action; (c) are not and will not be in violation of any Requirement of Law or contractual obligation of Borrower; and (d) do not and will not require the consent or approval of any Governmental Authority or any other Person.  As of the Effective Date or the date of each Drawing, as applicable, each Loan Document shall have been duly executed and delivered on behalf of Borrower, and each such Loan Document upon such execution and delivery shall be and will continue to be a legal, valid and binding obligation of Borrower, enforceable against it in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency and other similar laws affecting creditors' rights generally.

4

3.3     Government Regulation.  Borrower is not subject to or regulated under any governmental statute, rule or regulation that restricts or limits Borrower's ability to incur indebtedness, pledge its assets, or to perform its obligations under the Loan Documents.  The making of the Term Loan, the application of the proceeds and repayment thereof, and the consummation of the transactions contemplated by the Loan Documents do not and will not violate any Requirement of Law.

3.4     Payment of Obligations.  Borrower will pay, discharge or otherwise satisfy at or before maturity or before they become delinquent, as the case may be, all of its charges and other obligations of whatever nature, except where the amount or validity thereof is currently being contested in good faith by appropriate proceedings.

3.5     Litigation.  No Litigation is pending or, to the knowledge of Borrower, threatened by or against Borrower or against Borrower's properties or revenues (a) with respect to any of the Loan Documents or any of the transactions contemplated hereby or thereby, or (b) that could reasonably be expected to have a Material Adverse Effect.

3.6     Collateral.  The Collateral represents all of the assets of the Borrower, and the Collateral are free of Encumbrances.

3.7     Further Assurances.  At any time and from time to time, upon the written request of Lender and at the sole expense of Borrower, Borrower shall promptly and duly execute and deliver any and all such further instruments and documents and take such further action as Lender may reasonably deem desirable (a) to obtain the full benefits of this Agreement and the other Loan Documents or (b) to enable Lender to exercise all or any of the rights and powers herein granted.

4.      EVENTS OF DEFAULT: RIGHTS AND REMEDIES

4.1     Events of Default.  The occurrence of any one or more of the following events (regardless of the reason therefor) shall constitute an "Event of Default" hereunder, which shall be deemed to be continuing until waived in writing by Lender in accordance with Section 6.3:

    (a)     Borrower shall fail to make any payment in respect of any Obligations when due and payable or declared due and payable and fails to cure such breach within ten (10) Business Days; or

    (b)     Borrower shall fail or neglect to perform, keep or observe any material term contained in this Agreement or any of the other Loan Documents and fails to cure such breach within twenty (20) Business Days (or commence curing if the breach cannot be cured within twenty (20) Business Days); or

    (c)     any representation or warranty in this Agreement or any other Loan Document, or in any written statement pursuant hereto or thereto, or in any report, financial statement or certificate made or delivered to Lender by Borrower shall be untrue or incorrect in any material respect as of the date when made or deemed made; or

    (d)     Borrower shall (i) commence any case, proceeding or other action under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency,

5

reorganization, conservatorship or relief of debtors, seeking to have an order for relief entered with respect to it or seeking appointment of a custodian, receiver, liquidator, assignee, trustee or sequestrator (or similar official) for it or any substantial part of its properties, or (ii) shall admit in writing its inability to, or shall be generally unable to, pay its debts as such debts become due; or

(e) any other event shall have occurred that has had or could reasonably be expected to have a Material Adverse Effect.

4.2  Remedies.  (a)  If any Event of Default shall have occurred and be continuing, Lender may, upon five (5) Business Days' prior written notice to Borrower, declare the Obligations to be forthwith due and payable and exercise any rights and remedies provided to Lender under the Loan Documents or at law or equity.

5.  SUCCESSORS AND ASSIGNS

5.1  Each Loan Document shall be binding on and shall inure to the benefit of Borrower and Lender, and their respective successors and permitted assigns, except as otherwise provided herein or therein.  Borrower may not assign, transfer, hypothecate, delegate or otherwise convey its rights, benefits, obligations or duties under any Loan Document without the prior express written consent of Lender.  Any such purported conveyance by Borrower without the prior express written consent of Lender shall be void. There shall be no third party beneficiaries of any of the terms and provisions of any of the Loan Documents.

5.2  Lender has the right to assign all this Agreement in its entirety to any party provided (i) it informs the Borrower about such assignment in case the Assigned Party is the subsidiary or controlled affiliate of the Lender, or (ii) requests and receives from the Borrower the assignment consent before completing the assignment to any third party that is unrelated to the Lender.

6.  MISCELLANEOUS

6.1  Complete Agreement; Modification of Agreement.  This Agreement and the other Loan Documents constitute the complete agreement between the parties with respect to the subject matter hereof and thereof, and supersede all prior agreements, commitments, understandings or inducements (oral or written, expressed or implied).  No Loan Document may be modified, altered or amended except by a written agreement signed by Lender and Borrower.

6.2  Expenses.  Each party shall pay its own costs and expenses (including the fees and expenses of all counsel, advisors, consultants and auditors retained in connection therewith), incurred in connection with this transaction.

6.3  No Waiver.  Neither Lender's failure, at any time, to require strict performance by Borrower of any provision of any Loan Document, nor Lender's failure to exercise, nor any delay in exercising, any right, power or privilege hereunder, shall operate as a waiver thereof or waive, affect or diminish any right of Lender thereafter to demand strict compliance and performance therewith.  No single or partial exercise of any right, power or privilege hereunder shall preclude any other or future exercise thereof or the exercise of any other right, power or privilege. Any suspension or waiver of a Default or other provision under the Loan Documents shall not suspend, waive or affect any other Default or other provision under any Loan

6

Document, and shall not be construed as a bar to any right or remedy that Lender would otherwise have had on any future occasion. None of the undertakings, indemnities, agreements, warranties, covenants and representations of Borrower to Lender contained in any Loan Document and no Default by Borrower under any Loan Document shall be deemed to have been suspended or waived by Lender, unless such waiver or suspension is by an instrument in writing signed by an officer or other authorized employee of Lender and directed to Borrower specifying such suspension or waiver (and then such waiver shall be effective only to the extent therein expressly set forth), and Lender shall not, by any act (other than execution of a formal written waiver), delay, omission or otherwise, be deemed to have waived any of its rights or remedies hereunder.

6.4     Severability; Section Titles.  Wherever possible, each provision of the Loan Documents shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of any Loan Document shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of such Loan Document.  The Section titles contained in any Loan Document are and shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement between the parties hereto.

6.5     Notices.  Except as otherwise provided herein, whenever any notice, demand, request or other communication shall or may be given to or served upon any party by any other party, or whenever any party desires to give or serve upon any other party any communication with respect to this Agreement, each such communication shall be in writing and shall be deemed to have been validly served, given or delivered upon the earlier of (a) actual receipt, (b) three (3) Business Days after being deposited with a reputable overnight courier with all charges prepaid or (c) when hand-delivered, all of which shall be addressed to the party to be notified and sent to the address or facsimile number indicated in Schedule B or to such other address (or facsimile number) as may be substituted by notice given as herein provided.

6.6     Counterparts.  Any Loan Document may be authenticated in any number of separate counterparts by any one or more of the parties thereto, and all of said counterparts taken together shall constitute one and the same instrument.  Any Loan Document may be authenticated by manual signature, facsimile or, if approved in writing by Lender, electronic means, all of which shall be equally valid.

6.7     GOVERNING LAW.  THE LOAN DOCUMENTS AND THE OBLIGATIONS ARISING UNDER THE LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK (USA) APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH JURISDICTION, WITHOUT REGARD TO THE PRINCIPLES THEREOF REGARDING CONFLICTS OF LAWS.

6.8     Confidentiality.  The Term Loan and the terms of this Agreement are confidential and will not be disclosed by any party hereto to any third party (other than each party's professional advisors and such third parties as may be required to consent to the transaction, and any disclosure required by applicable law) without the prior, written consent of the other party.

7

6.9     <u>Reinstatement</u>.  This Agreement shall continue to be effective, or be reinstated, as the case may be, if at any time payment of all or any part of the Obligations is rescinded or must otherwise be returned or restored by Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Borrower, or otherwise, all as though such payments had not been made.

IN WITNESS WHEREOF, this Loan Agreement has been duly executed as of the date first written above.

BORROWER

**P8H, Inc.**

By:_____
Name: Norman Hansen
Title: Chairman



LENDER

**OAKLEY CAPITAL INTERNATIONAL AG**

By:_____
Name: Sergey Skaterschikov
Title: Managing Director

8

SCHEDULE A

DEFINITIONS

Capitalized terms used in this Agreement and the other Loan Documents shall have (unless otherwise provided elsewhere in this Agreement or in the other Loan Documents) the following respective meanings:

"Affiliate" means, with respect to any Person: (i) each other Person that, directly or indirectly, owns or controls, whether beneficially, or as a trustee, guardian or other fiduciary, five percent (5%) or more of the stock having ordinary voting power for the election of directors of such Person; (ii) each other Person that controls, is controlled by or is under common control with such Person or any Affiliate of such Person; or (iii) each of such Person's officers, directors, joint venturers and partners.  For the purpose of this definition, "control" of a Person shall mean the possession, directly or indirectly, of the power to direct or cause the direction of its management or policies, whether through the ownership of voting securities, by contract or otherwise.

"Agreement" means this Agreement, including all appendices, exhibits or schedules attached or otherwise identified thereto, restatements and modifications and supplements thereto, and any appendices, exhibits or schedules to any of the foregoing, each as in effect at the time such reference becomes operative.

"Business Day" means any day that is not a Saturday, a Sunday or a day on which banks are required or permitted to be closed in France or the United States.

"Default" means any Event of Default or any event that, with the passage of time or notice or both, would, unless cured or waived, become an Event of Default.

"Encumbrances" means a lien, charge, claim, demand, condition, equitable interest, option, warrant, pledge, security interest, mortgage, assignment, hypothecation, easement, right of first refusal, right of pre-emption, retention of ownership rights, or restriction of any kind, including any restriction on use, voting, transfer, receipt of income, or exercise of any other attribute of ownership, or other encumbrance or right exercisable by a third party having similar effect, in any case, whether arising by operation of law or contract.

"Event of Default" has the meaning assigned to it in Section 4.1.

"Governmental Authority" means any nation or government, any state or other political subdivision thereof, and any agency, department or other entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"Litigation" means any claim, lawsuit, litigation, investigation or proceeding of or before any arbitrator or Governmental Authority.

"Loan Documents"  means this Agreement, the Term Loan Note, the Security Agreement and other documents, instruments, certificates, and notices at any time delivered by any Person (other than Lender) in connection with any of the foregoing.

9

"<u>Material Adverse Effect</u>" means a material adverse effect on (a) the business, assets, operations, prospects or financial or other condition of Borrower or the industry within which Borrower operates, (b) Borrower's ability to pay or perform the Obligations under the Loan Documents in accordance with the terms thereof, or (c) Lender's rights and remedies under this Agreement and the other Loan Documents.

"<u>Obligations</u>" means all loans, advances, debts, liabilities, and obligations for the performance of covenants, tasks or duties or for payment of monetary amounts (whether or not such performance is then required or contingent, or amounts are liquidated or determinable) owing by Borrower to Lender arising under any of the Loan Documents.

"<u>Person</u>" means any individual, sole proprietorship, partnership, limited liability partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, public benefit corporation, entity or government (including any instrumentality, division, agency, body or department thereof), and shall include such Person's successors and assigns.

"<u>Requirement of Law</u>" means as to any Person, the organizational or governing documents of such Person, and any law, treaty, rule or regulation or determination of an arbitrator or a court or other Governmental Authority, in each case binding upon such Person or any of its property or to which such Person or any of its property is subject.

"<u>Term Loan Note</u>" means the promissory note of Borrower dated the Effective Date, substantially in the form of <u>Exhibit A</u>.

"<u>Termination Date</u>" means the date on which all Obligations under this Agreement are indefeasibly paid in full, in cash or otherwise satisfied pursuant to the term of this Agreement.

For purposes of this Agreement and the other Loan Documents, the following additional rules of construction shall apply, unless specifically indicated to the contrary: (a) wherever from the context it appears appropriate, each term stated in either the singular or plural shall include the singular and the plural; (b) the term "or" is not exclusive; (c) the term "including" (or any form thereof) shall not be limiting or exclusive; (d) all references to statutes and related regulations shall include any amendments of same and any successor statutes and regulations; and (e) all references to any instruments or agreements, including references to any of the Loan Documents, shall include any and all modifications or amendments thereto and any and all extensions or renewals thereof.

## SCHEDULE B

LENDER'S AND BORROWER'S ADDRESSES FOR NOTICES

Lender's Address: 48 Gerbergasse Basel, CH-4001, Switzerland

Name:    Oakley Capital International AG

Address: Basel, Switzerland

Att'n:    Director

Email:    mgajny@stockaccess.com


Borrower's Address:

Name:    **P8H, Inc.**

Address: 107 Norfolk Street, New York, 10002, NY, USA

Att'n:    Director

Email: [ramesh.ganeshan@paddle8.com](ramesh.ganeshan@paddle8.com)

11

## Exhibit A
## Form of Borrower's Term Loan Note

US$ 10,000,000                                                             New York, New York USA
                                                                                    February 12, 2019

For value received, the receipt and sufficiency of which are hereby acknowledged, **P8H, Inc.** ("Borrower"), as the Borrower under and as defined in that certain Loan Agreement (as the same may be amended, restated or supplemented from time to time, the "Agreement") of even date herewith between this Borrower and **OAKLEY CAPITAL INTERNATIONAL AG**, a Swiss company ("Lender"), hereby promises to pay to the order of Lender the sum of US$ 10,000,000, together with interest on the unpaid Term Loan Balance and refinancing of the Outstanding Loans.  This Note is the Term Loan Note issued under the Agreement to which a reference is made for a statement of all of the terms and conditions of the Loan evidenced hereby.  Capitalized terms not defined in this Term Loan Note shall have the respective meanings assigned to them in the Agreement.  This Term Loan Note is secured by the Security Agreement and the other Loan Documents, and is entitled to the benefit of the rights and security provided thereby.  If any provision of this Note is found to conflict with a provision of the Agreement, the provision of the Agreement shall control.

Interest on the outstanding Term Loan Balance is payable at the rate of seven (7) percent per annum, in immediately available United States funds at the time and in the manner specified in the Agreement.  The outstanding principal and interest under this Note shall be immediately due and payable on the Termination Date.  Payments received by Lender shall be applied against principal and interest as provided for in the Agreement.  Borrower acknowledges that (a) Lender is authorized under the Agreement to charge to the Term Loan unpaid Obligations of Borrower to Lender, (b) the principal amount of the Term Loan Balance will be increased by such amounts, and (c) the principal, as so increased, will bear interest as provided for herein and in the Agreement.

To the fullest extent permitted by applicable law, Borrower waives presentment, demand and protest, and notice of presentment, dishonor, intent to accelerate, acceleration, protest, default, nonpayment, maturity, release, compromise, settlement, extension or renewal of any or all of the Obligations, the Loan Documents or this Term Loan Note

Borrower acknowledges that this Term Loan Note is executed as part of a commercial transaction and that the proceeds of this Term Loan Note will not be used for any personal or consumer purpose.

Upon the occurrence of any one or more of the Events of Default specified in the Agreement, all amounts then remaining unpaid on this Term Loan Note shall become, or may be declared to be, immediately due and payable, all as provided therein.

THIS NOTE IS GOVERNED BY THE LAW OF THE STATE OF NEW YORK, USA.

                              ("Borrower")

                              **P8H, Inc.**

                              By: _____
                              Name: Norman Hansen
                              Title: Chairman